UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JACKIE MYERS, et al.,

              Plaintiffs,

v.

DICK'S SPORTING GOODS, INC.,

              Defendant.

No. 2:25-cv-03241-DJC-CKD

ORDER

Plaintiffs sued Defendant Dick's Sporting Goods, Inc. in Sacramento County Superior Court. Defendant then removed the case to this Court and sought to compel Plaintiffs to arbitrate their claims or to dismiss the case. For the reasons stated below, the Court concludes Plaintiffs lack Article III standing to bring their claims in federal court and remands the case to Sacramento County Superior Court.

## BACKGROUND

Plaintiffs Jackie Myers and Anthony Marquez regularly visit and browse Defendant Dick's Sporting Goods, Inc.'s website. (Compl. (ECF No. 1-1) ¶¶ 95–96.) On such visits, Plaintiffs allege Defendant has installed trackers and cookies developed by Criteo, Facebook, Nextdoor, Pinterest, Snapchat, Tik Tok, Microsoft, and Sovrn Holdings on Plaintiffs' browsers. (*Id.* ¶ 2.) These trackers then collect

1

information about Plaintiffs' interactions with the Dick's Sporting Goods website and disseminate that information, along with "users' identifying information – including the user's IP address" to third parties. (*Id.* ¶¶ 23, 76, 89.)

Plaintiffs filed suit against Defendant in Sacramento County Superior Court, seeking to represent a class of "United States residents who accessed the Website and had their identifying information and website behavior data collected by the Trackers." (*Id.* ¶ 106.) Defendant removed the action to this Court (*see* ECF No. 1) and filed a Motion to Compel Arbitration (ECF No. 12) and a Motion to Dismiss (ECF No. 14).

After reviewing the Complaint and the relevant pleadings, the Court ordered the parties to file supplemental briefing on whether Plaintiffs have Article III standing. (*See* ECF No. 21.) Both parties complied. (*See* Pls.' Br. (ECF No. 22); Def.'s Br. (ECF No. 23).) The Court ordered Defendant's Motions submitted without oral argument pursuant to Local Rule 230(g). (*See* ECF No. 24.)

**DISCUSSION**

The Court is required to assess whether Plaintiffs have standing, regardless of whether the parties raise the issue. *Montana Green Party v. Jacobsen*, 17 F.4th 919, 927 (9th Cir. 2021). Having reviewed the parties' supplemental briefing on this question, the Court concludes Plaintiffs lack standing to pursue their claims in federal court.

At this stage in a class action, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007*); see also Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026) (explaining that the Ninth Circuit has "consistently held that Article III's requirements are satisfied before a class is certified as long as at least one named plaintiff has standing"). Further, the plaintiff "bears the burden of showing that he has standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The plaintiff must demonstrate that they have suffered: (1) an injury in fact; (2) that is traceable to or caused by the defendants'

conduct; (3) that can likely be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

An injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

To be concrete, the injury "must be de facto; that is, it must actually exist." *Id.* at 340 (internal quotation marks omitted). "Tangible injuries, like physical harms or monetary losses, are concrete." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023). But "[a] concrete injury need not be tangible." *Id.* (quoting *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019)). Moreover, a legislature may enact laws that protect substantive interests, a violation of which may also constitute an injury in fact. Legislatures are "well positioned to identify [tangible and] intangible harms that meet minimum Article III requirements." *Spokeo*, 578 U.S. at 341; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 462 (2021) (Kagan, J., dissenting). However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. In cases involving a legislatively identified harm, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," such as common law torts or certain constitutional violations. *Id.*; *see also Phillips*, 74 F.4th at 991. In other words, it is necessary to assess "the match between the injury that [plaintiffs] allegedly experienced and the kinds of harms that were actionable at common law." *Popa v. Microsoft Corp.*, 153 F.4th 784, 790 (9th Cir. 2025).

*////*

Plaintiffs do not argue Defendant inflicted tangible harm, nor could they based on the allegations in the Complaint.[1]  Rather, Plaintiffs argue they have suffered the intangible harm of an intrusion on their privacy in a manner that would be actionable at common law.  (Pls.' Br. at 5.)  Specifically, Plaintiffs point to the allegation that the trackers send information about their engagement with the Website alongside personally identifying information.  (*Id.*; *see* Compl. ¶ 93.)  According to the Complaint, the trackers embedded on Defendant's website track information such as "when a user adds an item to their cart, adds payment information, adds an item to their wish list, customizes a product, submits a form, performs a search, or views content on a particular page."  (*Id.* ¶ 79.)  The Complaint alleges such data is personally identifiable as it is sent alongside a user's IP address and devices are "identifiable by the combination of a public IP address and device characteristics that are unique in the household."  (*Id.* ¶ 28.)  Further, the Complaint alleges "[t]here exists and [sic] industry of IP geolocation services that tracks the association between the household's IP addresses and their geographic location, and provides APIs that map IP addresses to geographic locations, providing estimates of such information as longitude and latitude and the associated city, state, and (for US addresses) zip code."  (*Id.* ¶ 29.)

These allegations do not give rise to a sufficiently concrete injury.  Plaintiffs are correct that "violations of the right to privacy have long been actionable at common

[1] Although the Complaint describes the value of users' information in Defendant's hands (*see, e.g.*, Compl. ¶ 145), it does not identify how the value of that information has diminished in Plaintiffs' hands because of Defendants' actions.  Therefore, this allegation does not support the finding that Plaintiffs suffered economic injury.  *See Tash v. Vision Service Plan*, No. 2:25-cv-00762-DJC-JDP, 2026 WL 1012680, at *5 (E.D. Cal. Apr. 14, 2026); *see also Carolus v. Nexstar Media Inc.*, No. 3:24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (holding plaintiffs failed to allege economic injury from the tracking of their data in part because they did not allege "how (or to what degree) the value of that information decreases" with defendant's actions).  The allegation that "Plaintiffs and Class Members have suffered harm and injury, including but not limited to . . . loss of money and costs incurred" (Compl. ¶ 168) also does not support a finding that Plaintiffs suffered a tangible injury absent more specific allegations about how Defendant's actions triggered a "loss of money."  *See Holcomb v. California Bd. of Psychology*, No. 2:15-cv-02154-KJM-CKD, 2016 WL 3126127, at *3 (E.D. Cal. June 3, 2016) (holding "conclusory assertions" that plaintiff suffered "significant economic damages" was insufficient to establish standing "without providing any factual support for such assertions")

law."  (Pls.' Br. at 5; *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017).) However, while Plaintiffs need not identify an "exact duplicate" of their injury in the common law, their injury must match the kind of harm recognized by a specific tort. *Popa*, 153 F.4th at 791.  Plaintiffs argue their alleged injuries align with the harms inflicted by "disclosure of private information" and "intrusion upon seclusion" (Pls.' Br. at 6), which the Supreme Court has identified as "intangible harms [that] can also be concrete."  *TransUnion*, 594 U.S. at 425.

Analogy to either of these torts fails for the same reason: both require an invasion of privacy that would be "highly offensive to a reasonable person."  *Popa*, 153 F.4th at 791; *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048–49 (N.D. Cal. 2022) (explaining that "for both torts, the harm is caused by the disclosure of or intrusion upon matters of a kind that would be 'highly offensive to a reasonable person'").  The disclosure of information about what products Plaintiffs view on a sporting goods website does not qualify as "highly offensive" as this information is not sensitive or private.  *Compare with Tash v. Vision Service Plan*, No. 2:25-cv-00762-DJC-JDP, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) (finding plaintiff who alleged defendant used similar tracking technologies to disseminate information about the "type of medical provider [the plaintiff] was looking for" and the "specific medical services and vision products he sought" satisfied injury in fact requirement).  Further, although Plaintiffs allege the trackers disseminated "Plaintiffs' and class members' personally identifying and addressing information, including their IP addresses," they do not identify any personally identifying information transmitted beyond an IP address.  (*See* Compl. ¶ 152.)  The disclosure of an IP address is insufficient harm to confer standing unless paired with more sensitive information.  *Bradshaw v. Lowe's Companies, Inc.*, No. 25-cv-00742-DMS-MMP, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (rejecting standing based on allegations of similar information disclosures and explaining that "Defendants argue there is no reasonable expectation of privacy in one's IP address, and the case law overwhelmingly supports that argument").

5

Therefore, the harm Plaintiffs allege is not sufficiently analogous to that protected against by common law privacy torts.

The harm Plaintiffs allege aligns with that the Ninth Circuit found insufficiently concrete to confer standing in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). In that case, the plaintiff alleged tracking technologies disclosed the products she viewed on a pet supply website to third parties. *Id.* at 786.  The trackers also revealed her mailing address but omitted her street number and zip code. *Id.* at 786–87.  In the Ninth Circuit's view, "[a]t most, Popa allege[d] that Clarity gathered her pet-store preferences and her street name." *Id.* at 791.  The Ninth Circuit deemed this harm insufficiently concrete to confer standing as plaintiff identified "no embarrassing, invasive, or otherwise private information collected." *Id.*  The court reasoned that "the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.*  As Plaintiffs here similarly allege the transmission of their preferences for conventional products and information that could hypothetically be used to identify their addresses, they have failed to allege they suffered a concrete injury.

Plaintiffs' cited cases are distinguishable.  As *Popa* explicitly identified, whether Plaintiff's injury was sufficiently concrete to establish Article III standing was not before the court in *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023).  *Popa*, 153 F.4th at 793 (explaining that "the question of concreteness under *TransUnion* was not clearly presented" in *Jones* and that "statements touching on an issue that was not clearly presented are not entitled to the same weight as carefully reasoned analysis of the issue").  Further, that case involved the collection of much more private information as the defendant there had stored and made accessible to a third party plaintiffs' "private text messages." *Jones*, 85 F.4th at 572–73.

Similarly, the information disclosed to third parties in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) was both more sensitive and more

comprehensive than that at issue here.  There, the complaint alleged tracking occurred "no matter how sensitive or personal users' browsing histories were."  *Id*. at 598 (internal quotation marks omitted).  This information was then linked to "a user's employment history and political and religious affiliations."  *Id*. at 599.  The tracking at issue in *Internet Tracking* also did not stop when the user left or logged off the defendant's platform.  Rather, Facebook allegedly continued to collect data about users' browsing history and contact with other sites even when they were not using Facebook's platforms.  *Id*. at 598.  Since *Popa*, courts in this Circuit have distinguished between tracking technologies that create such a "cradle-to-the-grave profile of sensitive, personally revealing information gathered across the internet" and those that are "more reminiscent of a store clerk's observing shoppers" and found that only the former confer standing.  *Magliocca v. United States Healthcare Services, Inc.*, No. 2:25-cv-003388-WBS-SCR, 2026 WL 878694, at *3–4 (E.D. Cal. Mar. 31, 2026) (internal quotation marks omitted).  Plaintiffs' case clearly falls within the latter class as Plaintiffs do not allege any sensitive information was disclosed nor that Defendant tracked or shared information about Plaintiffs' activities beyond Defendant's website.

Finally, *Internet Tracking* and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) each predate both *TransUnion* and *Popa* and relied on the applicable test at the time.  *Popa* clarified that *TransUnion* altered this test as it "made no distinction between 'procedural' and 'substantive' statutory provisions" and instead directed courts to "assess whether 'plaintiffs have identified a close historical or common-law analogue for their asserted injury.'"  *Popa*, 153 F.4th at 794 (quoting *TransUnion*, 594 U.S. at 424).  The Ninth Circuit even went so far as to suggest that it might now analyze *Eichenberger* differently in light of *TransUnion*.  *Id*. at 794–95 ("Perhaps we might analyze that statute differently today, especially after the Supreme Court's decision in *TransUnion*, but we need not reach that issue to decide whether Popa has adequately alleged standing in this case.").

Accordingly, the Court concludes Plaintiffs lack Article III standing.

7

## I.   Remand

If a plaintiff lacks standing in a case removed to federal court, the Court typically must remand to state court rather than dismiss the case.  *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1447(c)).  Where, as here, there is no indication the state court, which is not bound by the constraints of Article III, could not adjudicate Plaintiffs' claims, the proper course of action is remand. *See id.*

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that this case is REMANDED to Sacramento County Superior Court.  This Order resolves all pending motions.

IT IS SO ORDERED.

Dated:   **April 16, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Myers25cv03241.mtd&mtca